IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID COX and KAREN COX, | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| WAL-MART STORES EAST, L.P., | : | |
| Defendant | : | NO. 07-2391 |

**M E M O R A N D U M**

PRATTER, J.                                                                                                 AUGUST 26, 2008

**INTRODUCTION**

In this "slip-and-<u>no</u>-fall" case, David Cox alleges that he was injured on July 29, 2005 when he slipped, but did not fall, as he stepped on a small patch of oil on the floor inside a Philadelphia-area Wal-Mart store. Mr. Cox sued Wal-Mart Stores East, L.P. ("Wal-Mart"), alleging one count of negligence. Karen Cox, Mr. Cox's wife, asserts a claim for loss of consortium.

Wal-Mart has filed a motion for summary judgment, which Plaintiffs oppose. Because Plaintiffs have not produced evidence establishing that Wal-Mart had actual or constructive notice of the oil spill prior Mr. Cox's accident, Wal-Mart's motion will be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are undisputed unless otherwise noted. Where there is a dispute, the facts are viewed in the light most favorable to the non-moving party, the Plaintiffs.

At his deposition in this case, Mr. Cox testified that on July 29, 2005 he and his family went to the Wal-Mart store at One Franklin Mills Boulevard in Philadelphia to shop for school supplies. While there, Mr. Cox and his son went to Wal-Mart's automotive department to shop for motor oil and an oil filter. (Def. Statement of Facts ¶ 4; Pls. Answer Opp'n ¶ 4.)

Mr. Cox testified that did not observe any spills, broken products, safety hazards or obstructions while he shopped (Def. Statement of Facts ¶ 3; Pls. Answer Opp'n ¶ 3), nor did he see any liquid, oil or other substances on the floor in the automotive department (prior to the accident that forms the basis for his Complaint). (Def. Statement of Facts ¶ 5; Pls. Answer Opp'n ¶ 5.) Mr. Cox testified that he did not recall seeing any other customers in the motor oil aisle when he initially walked through the area. (Def. Statement of Facts ¶ 6; Pls. Answer Opp'n ¶ 6.)

After spending a few minutes walking in the automotive department, Mr. Cox selected a five-gallon container of motor oil and removed it from the shelf. (Def. Statement of Facts ¶ 7; Pls. Answer Opp'n ¶ 7.) As he walked back toward the front of the store carrying the five-gallon container, Mr. Cox slipped on an "oil like slippery substance." (Pls. Answer Opp'n ¶ 8; Cox. Dep. 48:14, Feb. 4, 2008.) Mr. Cox's right foot slid forward and he twisted his body to the left. During the incident, he held on to the five-gallon container of motor oil as he kept his body from falling to the floor. (Def. Statement of Facts ¶ 10; Pls. Answer Opp'n ¶ 10.) He did not fall. (Def. Statement of Facts ¶ 1; Pls. Answer Opp'n ¶ 1.) At that time, Mr. Cox observed other customers – an older couple – approximately two to five feet from the area where he slipped. (Def. Statement of Facts ¶ 9; Pls. Answer Opp'n ¶ 9.) The older gentleman "caught" Mr. Cox before he fell to the floor.[1]

After he slipped, Mr. Cox looked down at the floor and observed a single "long, black

---

[1] Edward Wodack, the associate in the automotive department on duty on the date of the incident, testified that Mr. Cox informed him that "an older gentleman" caught him before he fell completely to the floor. (Wodack Dep. 29:12-18, Dec. 4, 2007.) Mr. Wodack then spoke to this gentleman, whose name does not appear in the record, who also reportedly stated that he caught Mr. Cox as he started to fall backwards. (Wodack Dep. 31:11-13.)

mark that [he] left on the floor." (Pls. Answer Opp'n ¶ 8; Cox. Dep. 49:15-16.)  He said the mark had "stretched out" after he slid on it, forming a one-inch long smear.  (Def. Statement of Facts ¶ 12; Pls. Answer Opp'n ¶ 12.)

Mr. Cox testified that he did not know the source of the spill.  In fact, he testified that he had not seen any evidence of broken or leaking containers in the area before or after he slipped.  (Def. Statement of Facts ¶ 13; Pls. Answer Opp'n ¶ 13.)  Mr. Cox had walked through the area "minutes prior to" the incident and had not observed any oil on the floor.  (Def. Statement of Facts ¶ 11; Pls. Answer Opp'n ¶ 11.)  Other than the single black mark Mr. Cox observed on the floor following his slip, he did not see any other evidence of oil on the floor after the incident.  (Def. Statement of Facts ¶ 14; Pls. Answer Opp'n ¶ 14.)

Mr. Cox testified that after he slipped, he set the oil container down, covered the small smear of oil on the floor with a box, and went to find his wife.  (Def. Statement of Facts ¶ 15; Pls. Answer Opp'n ¶ 15.)  Plaintiffs then went to the sporting goods department and reported the incident to Edward Wodack, a Wal-Mart associate on duty.  Mr. Cox informed Mr. Wodack that he had slipped and had injured his back; Mr. Cox also indicated that he wanted to make a formal report.  (Wodack Dep. 26:18-24.)  Mr. Wodack paged Assistant Manager Dwight Martin, who took Mr. Cox's report.  (Def. Statement of Facts ¶ 17; Pls. Answer Opp'n ¶ 18; Wodack Dep. 26:22-24.)[2]

---

[2] At his deposition, Mr. Martin testified regarding Wal-Mart's practice of responding to spills and inspecting the floors for spills.  (Def. Statement of Facts ¶ 24; Pls. Answer Opp'n ¶ 24.)  Wal-Mart produced documents describing the safety sweep guidelines and its procedures designed to reduce incidents of slips, trips, and falls in its stores.  (Def. Statement of Facts ¶ 27; Pls. Answer Opp'n ¶ 27.)

In addition, according to Mr. Wodack, it is every Wal-Mart associate's responsibility to inspect the floors for any problems.  (Def. Statement of Facts ¶ 25; Pls. Answer Opp'n ¶ 25.)  He

At his deposition Mr. Wodack testified that he was not aware of the oil on the floor prior to Mr. Cox's slip. He testified the he immediately cleaned up the affected area, including the smear on the floor, immediately after he learned that Mr. Cox had slipped. (Def. Statement of Facts ¶ 18; Pls. Answer Opp'n ¶ 18.) Mr. Wodack said the smear was the approximate size of a business card. (Def. Statement of Facts ¶ 19; Pls. Answer Opp'n ¶ 19.) Mr. Wodack also observed three or four small drops of oil under the ledge of the bottom shelf in the motor oil aisle. (Def. Statement of Facts ¶ 20; Pls. Answer Opp'n ¶ 20.) Each drop was smaller than a dime. (Def. Statement of Facts ¶ 21; Pls. Answer Opp'n ¶ 21.)[3]

Mr. Wodack testified that there was a five-gallon container of oil stacked sideways (i.e., laying on its side) on the bottom shelf of the aisle. (Pls. Answer Opp'n ¶ 35.) He stated that Wal-Mart personnel intentionally stack these five-gallon containers on their side – on the bottom shelf only – to conserve space, instead of displaying them in the upright position. (Pls. Answer Opp'n ¶ 38.) The five-gallon containers are stacked in the upright position on every shelf other than (i.e., above) the bottom shelf.

Mr. Wodack also testified that he cleaned "a little bit" of oil residue from the bottom shelf and from the lid of one five-gallon oil container that was stored on that shelf. (Def. Statement of Facts ¶ 22; Pls. Answer Opp'n ¶ 22.) He also stated that no oil was leaking from

---

stated that day maintenance associates "constantly" swept, mopped and cleaned the floors. (Def. Statement of Facts ¶ 26; Pls. Answer Opp'n ¶ 26.)

[3] When Mr. and Mrs. Cox returned to the area minutes after reporting the incident to Mr. Wodack and Mr. Martin, both the box Mr. Cox had used to cover the smear and the smear were gone. It appears that by that time, Mr. Wodack had already cleaned the floor. (Def. Statement of Facts ¶ 16; Pls. Answer Opp'n ¶ 16.) No one other than Mr. Wodack, including Mr. Cox, ever saw the three to four drops of oil on the floor.

the five-gallon container in question when he inspected it (Pls. Answer Opp'n ¶ 37), and that the lid of the container was secure (Def. Statement of Facts ¶ 23; Pls. Answer Opp'n ¶ 23).

Mr. Cox initiated this action in June 2007.  He asserts a single negligence claim against Wal-Mart, alleging that Wal-Mart employees failed to properly inspect and discover the presence of motor oil on the floor, and failed to properly clean the floors.  Mr. Cox claims that as a result of Wal-Mart's alleged negligence, and as a result of slipping, but not falling, on a spill of motor oil, he has "suffered serious, disabling and permanent injuries," and impairments of his vocational and avocational activities.  (Compl. ¶ 12.)  Mrs. Cox asserts a claim for loss of consortium as a result of her husband's injuries.

Discovery in this action is complete, prompting Wal-Mart to move for summary judgment, arguing that Mr. Cox cannot establish that Wal-Mart is liable under any theory of "negligence," in particular, because he cannot prove that Wal-Mart had actual or "constructive" notice that oil, which caused Mr. Cox to slip, had spilled on the floor.  Plaintiffs oppose the motion, arguing that genuine disputes of material fact remain that warrant a jury trial on the merits.

**LEGAL STANDARD**

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843

F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable fact-finder could possibly hold in the non-movant's favor with regard to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" only if it could affect the result of the suit under governing law. Id.

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 217, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record. Celotex, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 642 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

**DISCUSSION**

Plaintiffs bring a premises-liability negligence claim. The basic elements of a negligence cause of action are: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the

plaintiff incurred actual loss or damage. Krentz v. CONRAIL, 910 A.2d 20, 27 (Pa. 2006). Thus, establishing that the defendant breached a legal duty is a condition precedent to proving negligence. Shaw v. Kirschbaum, 653 A.2d 12, 15 (Pa. Super. Ct. 1994).

The nature of the duty which is owed in any given situation hinges primarily upon the relationship between the parties at the time of the plaintiff's injury. Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994). In premises-liability actions, the duty of care that a possessor of land owes to an entrant upon the land depends on the status of that person, that is, whether that person is a trespasser, licensee or invitee. Guttridge v. AP Green Services, Inc., 804 A.2d 643, 655 (Pa. Super. Ct. 2002) (citing Emge v. Hogosky, 712 A.2d 315, 317 (Pa. Super. Ct. 1998)). Mr. and Mrs. Cox were business "invitees" in this case. (See Pls. Mem. Opp'n 3; Def. Mem. 9.)

Under Pennsylvania law, a possessor of land "is not the insurer of the safety of those on the premises, and the mere existence of a harmful condition or the mere happening of an accident is not evidence of a breach of duty of care to invitees." Gales v. United States, 617 F. Supp. 42, 43 (W.D. Pa. 1985) (citing Moultrey v. Great Atl. & Pac. Tea Co., 422 A.2d 593 (Pa. Super. Ct. 1980)). A possessor of land owes the following duty to a business invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965).

"Notice" provides the threshold of establishing a breach of a possessor of land's duty. Kujawski v. Wal-Mart Stores, Inc., No. 06-4120, 2007 U.S. Dist. LEXIS 71261, at *9-10 (E.D. Pa. Sept. 25, 2007).  To establish notice, an "invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition."  Estate of Swift v. Ne. Hosp., 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (emphasis added).  Constructive notice requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence.  Martino v. Great Atl. & Pac. Tea Co., 213 A.2d 608, 610-11 (Pa. 1965).  State and federal courts applying Pennsylvania law in this area have consistently required a plaintiff "to provide some proof as to the length of time a spill existed on the floor to establish constructive notice."  Kujawski, 2007 U.S. Dist. LEXIS 71261, at *9-10 (citing cases).

In certain negligence cases, a plaintiff may prove negligence by applying the principle of res ipsa loquitor, which translates to "the thing speaks for itself."  This legal principle allows a plaintiff to prove that a defendant acted negligently simply because a harmful accident occurred. In Gilbert v. Korvette, Inc., 327 A.2d 94 (Pa. 1974), the Pennsylvania Supreme Court adopted the doctrine of res ipsa loquitur embodied in Section 328D of the Restatement (Second) of Torts, which provides:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
> > (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
> > (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
> > (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
> (2) It is the function of the court to determine whether the inference may reasonably

> be drawn by the jury, or whether it must necessarily be drawn.
> (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

Restatement (Second) of Torts § 328D (1965). "The Restatement makes clear that to reach the jury, the Plaintiff must by a preponderance of the evidence prove all of the elements enumerated in subsection (1)." Lonsdale v. Joseph Horne Co., 587 A.2d 810, 815 (Pa. Super. Ct. 1991) (citing Hollywood Shop, Inc. v. Pa. Gas & Water Co., 411 A.2d 509 (Pa. Super. Ct. 1979)).

However, Pennsylvania courts consistently have held that "when a patron suffers an injury in a store from a transitory danger, res ipsa loquitor does not apply." Neve v. Insalaco's, 771 A.2d 786, 790 (Pa. Super. Ct. 2001).[4] In particular, "res ipsa loquitor does not apply to prove the negligence of shopkeepers in slip and fall debris cases . . . because shopkeepers cannot be charged with notice of transitory dangers that can materialize a split second before an injury occurs." Id. (citing Moultrey, 422 A.2d at 596); see also Jones v. Sanitary Market Co., 137 A.2d 859, 861 (Pa. Super. Ct. 1958) (holding that res ipsa loquitor does not apply to prove negligence where plaintiff slipped on "a mere shred" of banana peel three inches long and one sixteenth of an inch wide); DeClerico v. Gimbel Bros., 50 A.2d 716, 717 (Pa. Super. Ct. 1947) (doctrine does

---

[4] The Neve court highlighted "two discrete types of situations involving such transitory dangers: (1) those in which a patron slipped on debris; and (2) those in which a patron was struck by falling goods that had been stacked properly for display." Neve, 771 A.2d at 789. The court held that res ipsa loquitor does not apply to prove a defendant's negligence in either of these circumstances. Id. at 789-90. In so holding, the court distinguished the situation where "a patron suffers an injury in a store from a defect that compromises the safety of the building itself." Id. at 790. The doctrine could apply in those situations. Id. (citing D'Ardenne v. Strawbridge & Clothier, Inc., 712 A.2d 318, 320 (Pa. Super. Ct. 1998) (applying doctrine where patron's shoe became caught in a store escalator, causing serious injury); Lonsdale, 587 A.2d at 812. n.2 (applying doctrine where a bathroom faucet handle spun violently, injuring a patron's hand); Hartigan v. Clark, 165 A.2d 647, 652 (Pa. 1960) (applying doctrine where patron tripped on raised metal strip on stair).

not apply where plaintiff slipped on "soft substance"; non-suit affirmed because plaintiff produced no evidence that defendant had notice). Instead, "[t]he presence of a shiny or oily substance on the floor of a business would constitute evidence sufficient to preclude summary judgment if: (1) the substance is of a type with an <u>inherently sustained duration</u>, as opposed to a <u>transitory</u> spill which could have occurred an instant before the accident; and (2) a witness saw the defect immediately before or after the accident." <u>Neve</u>, 771 A.2d at 791 (emphasis added).

In this case, there is no allegation, or any evidence, that Wal-Mart had actual notice of the spill. Wal-Mart argues that the undisputed facts do not establish, moreover, that it had constructive notice of the oil on the floor. Wal-Mart first argues that Mr. Cox has not established that Wal-Mart "created the hazard," and that he could not muster any circumstantial evidence to prove the requisite conditions. Secondly, Wal-Mart argues that Mr. Cox cannot establish constructive notice because there is no evidence establishing or providing any information whatsoever indicating how long the oil spill was on the floor before he slipped.

Plaintiffs dispute both arguments, and respond that there are genuine disputes of material fact as to whether (1) Wal-Mart had a role in creating the spill; or (2) Wal-Mart had constructive notice of the spill due to its duration on the floor, and the fact that the Wal-Mart associate on duty admits to not closely monitoring the cleanliness of the floor in the motor-oil aisle on the date in question.

**I.     WAL-MART'S ROLE IN "CREATING THE HAZARD"**

Plaintiffs seek to hold Wal-Mart liable for a three-to-four-drop oil spill that, by all accounts, was obscured by shelving in the motor oil aisle of the Wal-Mart store, and had not been observed by any person prior to Mr. Cox's slip. Plaintiffs argue that the evidence permits the

inference that Wal-Mart "created the hazard" that caused Mr. Cox's accident this case.

To justify this argument, Plaintiffs point to Mr. Wodack's testimony that (1) Wal-Mart employees intentionally stacked five-gallon oil containers on their sides on the bottom shelf; (2) there was oil residue on one of the containers that was stacked on its side; (3) there were three to four drops of oil beneath the bottom shelf on which five-gallon oil containers were stacked sideways; (4) the smear that caused Mr. Cox to slip was close to the bottom shelf.  Plaintiffs ask the Court to deduce that because Wal-Mart employees stacked the five-gallon oil containers on their side, and because residue was found on one of these containers and drops were observed on the floor beneath the containers, that container must have leaked as a result of Wal-Mart's negligence.

Defendant disagrees, arguing that Plaintiffs' negligence theory is pure conjecture.  Wal-Mart argues that there is no direct evidence that its employees created the spill in question, and that under Pennsylvania law, the Plaintiffs cannot prove negligence in this case through "res ipsa loquitur."

The Court agrees.  A small spill of oil on the floor of the Wal-Mart does not "speak for itself" it the sense that is required to apply res ipsa loquitur.  Certainly, an spill oil on the floor permits the inference that oil leaked from some source.  But there is nothing inherent about the spill of oil in this case that warrants a finding of negligence.  For example, while the facts permit identification of the "what" and the "where," this liability puzzle is still missing the "who," "when" and "how."

The only evidence in the record that could have any bearing on Wal-Mart's potential role in creating the spill is testimony from Mr. Wodack about what he observed nearby when he

cleaned up the oil in question after receiving the report about it.  Mr. Wodack stated that he observed oily residue <u>on</u> <u>the</u> <u>lid</u> of <u>one</u> of the five-gallon oil containers that was stacked above the three-to-four drop spill, but he also stated that the lid on this particular container was secure, and that it was not leaking when he checked it.   There was no evidence that any of the oil containers in Wal-Mart's automotive department in the vicinity of Mr. Cox's accident were actively leaking oil on the date in question.  There is no evidence that the three or four drops of oil on the floor, which were near the business-card-sized smear that caused Mr. Cox to slip, actually came from the one five-gallon container that omitted an oily residue.  There is no evidence that links the "smear" of oil on which Mr. Cox reportedly slipped, which was in the same vicinity as three or four drops of oil, to any negligent action or inaction by Wal-Mart.   It is not reasonable for a fact-finder to assume, based on the evidence in the record, that a securely sealed container nevertheless was leaking oil, or had leaked, and that Wal-Mart was responsible for causing that supposed leak.

Moreover, Plaintiffs have not offered any evidence that merely stacking these containers on their sides is hazardous in terms of causing leaks.  Stated differently, Plaintiffs have not produced evidence that would permit a fact-finder to conclude that these containers were not, in fact, designed to permit stacking on their sides, or any other evidence that would permit a finding of  negligence merely because Wal-Mart employees stacked five-gallon oil containers on their sides.  In fact, there is no evidence in record that shows: (1) whether these containers are designed to be stacked on their side (as opposed to being stacked in the upright position);[5] (2)

---

[5] Plaintiffs have not argued, or produced any evidence tending to show, that there is anything inherently unsafe or injurious to the integrity of the containers about stacking these particular five-gallon oil containers on their sides.  They have not endeavored to show, for

when the containers, including the one with an oily residue on the date in question, were originally stacked on the shelves or how long they had been there, much less their condition upon arrival; (3) who stacked them; (4) whether any one of these containers was leaking before it was first stacked on the shelves; (5) if any of these containers had been leaking, whether any Wal-Mart employees knew about or tended to the leak; (6) whether any Wal-Mart employees have experienced leaks from these containers in the past when they were stacked on their side; (7) whether any other five-gallon container, whether stacked sideways or otherwise, was leaking on the date in question; (8) whether the caps on these containers contained a "seal" that, if broken, could be opened and closed by customers; or (9) how oily residue typically accumulates on oil containers. Indeed, there is almost no evidence in the record about these containers at all other than that they hold five-gallons of oil, and that there was oily residue on the lid of one of these containers on the date Mr. Cox slipped.

Finally, as Wal-Mart argues, Plaintiffs have not produced any evidence that rules out other potential responsible causes for the presence of the drops of oil or the smear, such as third persons or Mr. Cox himself. See Restatement (Second) of Torts § 328D(1)(b) (1965). In order to prove negligence under these circumstances, Plaintiffs must prove all elements enumerated in sub-section (1) of Section 328D cited above. See Lonsdale, 587 A.2d at 815. In this case, there simply has been no evidence presented to the Court that "rules out" any of a host of potential causes.

In sum, there is no reason to assume, as Plaintiffs suggest, that the drops of oil on the

---

example, that the caps installed on these containers are insufficient to withstand the pressure of the containers' contents, when the containers are laid sideways.

floor materialized purely because the five-gallon oil containers were stocked on their side, and Plaintiffs have not produced any other evidence tending to show that Wal-Mart caused the oil spill, thereby "creating the hazard" that caused Mr. Cox's injuries.

## II. CONSTRUCTIVE NOTICE - DURATION OF THE DEFECT

Understandably, Plaintiffs characterize the primary issue before the Court as whether the evidence would permit a fact-finder to conclude that the oil spill on the floor occurred over a "duration" of time as opposed to "an instant before the accident." In other words, in order for this case to reach a jury – and to preclude entry of summary judgment – Plaintiffs must establish that the oil spill was of an "inherently sustained duration," and was not "transitory." Neve, 771 A.2d at 791.

The premise underlying constructive notice is that the defective condition must have been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence. See Martino, 213 A.2d at 610. Courts interpreting Pennsylvania law make clear that absent any evidence of the duration of time the spill remained on the floor prior to the accident, constructive notice cannot be inferred. See, e.g., Gales, 617 F. Supp. at 42 (finding plaintiff had not established constructive notice despite evidence that hospital employee had passed through area two hours prior and observed no puddle on the floor); Read v. Sam's Club, No. 05-0170, 2005 U.S. Dist. LEXIS 37579, at *14 (E.D. Pa. Sept. 23, 2005) (granting summary judgment for defendant because plaintiff failed to put forth any evidence as to the origin of the spill or as to how long the spill was on the floor prior to plaintiff's accident); Swift, 690 A.2d at 723 (affirming summary judgment because plaintiffs did not present any evidence as to how the water that caused the accident arrived on the floor or any evidence as to how long the condition

existed); Martino, 213 A.2d at 610 (affirming dismissal of negligence suit where plaintiff slipped on a grape in a grocery store, finding that the plaintiff failed to produce any evidence that the store proprietors were aware that grapes and other refuse were on the floor and made no efforts to remove them).

In this case, there is <u>no evidence</u> in the record as to how long the oil drops or smear remained on the floor prior to the accident. There is no evidence that any person, including either of the Plaintiffs, a Wal-Mart employee, or a customer, observed the presence of oil on the floor <u>before</u> the accident. Mr. Wodack testified that he was not aware of the spill prior to Mr. Cox's accident, and stated that he did not know the last time he inspected the floor in the automotive department.[6] He stated that as soon as he was notified about Mr. Cox's accident, he immediately cleaned up the spill.

Wal-Mart accurately notes, as Mr. Cox's testimony makes clear, that Mr. Cox had walked through the motor oil aisle – the very area where he had slipped – mere minutes before the incident, and did not observe any dangerous or oily substance on the floor. Although Mr. Cox notes that there were two other customers in the motor oil aisle at the time of the accident, there is no evidence in the record (whether through testimony from these customers or otherwise) that would indicate whether or not these customers saw the spill prior to Mr. Cox's slip. There is also no evidence that anyone other than Mr. Cox, who only saw the one-inch smear that allegedly caused him to slip, and Mr. Wodack, who saw the smear, which he described as being the size of

---

[6] There is no evidence of the last time a maintenance worker or other employee cleaned the motor oil aisle. There is no evidence of the last time a Wal-Mart employee visually inspected that aisle, or simply walked down it. Thus, it could have been days, hours or minutes before Mr. Cox's accident.

a business card, and the three to four drops of oil obscured by the bottom shelf, saw any additional evidence of oil on the floor <u>after</u> Mr. Cox slipped.  Plaintiffs do not contest that the three to four drops of oil observed by Mr. Wodack (but never observed by Plaintiffs themselves) were obscured by the bottom shelf in the motor oil aisle.  (Pls. Mem. Opp'n 4.)

Even though Plaintiffs offered no evidence as to how the spill accumulated, and there is very little evidence in the record regarding the nature and characteristics of the spill in question, Plaintiffs espouse a "slow drip" theory that they claim establishes that this spill was on the floor for a sustained period.[7]  Plaintiffs claim that a "slow drip" of oil from this five-gallon container caused the three to four drops of oil to accumulate beneath the bottom shelf upon which the container was stacked.   Plaintiffs offer an expert report from an engineer who opines that the facts here support the theory that the "slippery floor condition result[ed] from oil leakage over time" (Pls. Mem. Opp'n Ex. B at 6), and that "sideways stocking of the oil containers does explain oil leaking onto the flooring" (Pls. Mem. Opp'n Ex. B at 4).

Contrary to Plaintiffs' arguments, there is nothing "inherent" about this particular oil spill that suggests it was there for a "sustained duration."  (<u>See</u> Pls. Mem. Opp'n 4.)  Quite simply, there is no evidence tending to show whether the oil spill had been on the Wal-Mart floor for seconds, minutes, hours or days.  For example, there is no evidence or testimony that the oily substance on the floor was a particular color or texture, or that it was covered with dust or other debris, which could indicate that it had remained on the floor for a while, and was not "fresh" out

---

[7] Plaintiffs' "slow drip" argument is entwined with their argument that Wal-Mart "created the hazard," because Plaintiffs argue that Wal-Mart caused the slow drip, but the Court's analysis as to the "duration" issue is analytically distinct.  The Court's inquiry here is, regardless of whether Wal-Mart caused the spill to occur, did the spill remain on the floor long enough such that Wal-Mart should have known about it and should have cleaned it up?

of the container. Indeed, there is no evidence that it was the same substance as contained in the stacked five-gallon containers. There is no evidence that there were multiple steaks, smears, or other evidence of "tracking" in the oil, which could indicate that people before Mr. Cox had stepped on the oil and reported it to Wal-Mart employees. See Gales, 617 F. Supp. at 44 ("The absence of tracking from the area of a spill is evidence that the spill is one of recent origin.") (citing Lanni v. Pa. R.R. Co., 88 A.2d 887 (Pa. 1952)). Instead, the evidence indicates that there was a single "smear" the size of a business card in close proximity to three or four undisturbed drops of oil, each the size of a dime. While Plaintiffs content that the three-to-four drop leak was caused by a "slow drip" that leaked "over time," a fact-finder would have to engage in conjecture to reach that conclusion because there is no evidence to permit a fact-finder to distinguish between the possibility that three or four drops of oil leaked from the container all at once, minutes before the incident, and Plaintiffs' "slow drip" theory. See Dimino v. Wal-Mart Stores, Inc., No. 1208-2005, 2007 Pa. Dist. & Cnty. Dec. LEXIS 303, at *12 (Pa. County Ct. Feb. 12, 2007) (noting that plaintiff produced no evidence, "and so to find for the plaintiff, a fact-finder would have to 'guess whether the grease spot was on the [floor] 10 minutes, 10 hours or 10 days prior to plaintiff's accident.'") (quoting Hess v. Sun Ray Drug Co., 387 Pa. 199, 201, 127 A.2d 699, 701 (1956))). Based on testimony from Mr. Cox and Mr. Wodack, who are the only two individuals to have seen any oil, there is no evidence tending to establish that the spill of oil was on the floor for any sustained duration. To conclude that the oil on the floor in this case was present long enough that, in the exercise of reasonable care, Wal-Mart should have known of its presence, would require a fact-finder to engage in speculation and conjecture. Such conjecture is insufficient to preclude summary judgment as a matter of law. Id. Therefore, constructive notice

cannot be inferred on that basis.

**CONCLUSION**

Because Plaintiffs failed to produce evidence that Wal-Mart "created the hazard" or that the oil on the Wal-Mart floor had been there for any sustained duration, Plaintiffs have failed to establish that Wal-Mart had constructive notice of the spill.[8]  Therefore, Wal-Mart's motion for summary judgment will be granted.

An Order consistent with this Memorandum follows.

---

[8] Defendant's motion for summary judgment will be granted as to Mrs. Cox's loss of consortium claim as well.  "Under Pennsylvania law, loss of consortium derives only from the injured spouse's right to recover in tort . . . ." McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (citing Little v. Jarvis, 280 A.2d 617, 620 ( Pa. Super. Ct. 1971)).  In other words, a loss of consortium claim cannot survive on its own.  Because the Court will grant summary judgment on Mr. Cox's negligence claim, no tort claim remains, and, accordingly, Mrs. Cox's loss of consortium claim fails as a matter of law.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID COX and KAREN COX,** : | CIVIL ACTION |
| Plaintiffs : | |
| : | |
| vs. : | |
| : | |
| **WAL-MART STORES EAST, L.P.,** : | |
| Defendant : | NO. 07-2391 |

**O R D E R**

**AND NOW**, this 26th day of August, 2008, upon consideration of Defendant Wal-Mart Stores East, L.P.'s Motion for Summary Judgment (Docket No. 20), and Plaintiffs' response thereto (Docket No. 23), for the reasons discussed in the accompanying Memorandum, **IT IS ORDERED** that:

1. Defendant's Motion for Summary Judgment (Docket No. 20) is **GRANTED**.

2. The Clerk of Court shall enter judgment in favor of Defendant Wal-Mart Stores East, L.P., and against Plaintiffs David and Karen Cox.

3. The Clerk of Court shall mark this case **CLOSED** for all purposes, including statistics.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge